UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No.  8:12-cr-53-T-24 MAP

JAMAR ANTONIO MOORE

_____/

## ORDER

This cause comes before the Court on Defendant Jamar Moore's Motion to Suppress. (Doc. No. 21).  The Government opposes the motion.  (Doc. No. 26).  The Court held a hearing on this motion on April 4, 2012.  As explained below, the motion is granted.

## I.  Background

On October 9, 2011 at approximately 5:30 p.m., police responded to a 911 call involving a shooting in the courtyard of an apartment complex located at 4603 Whiteway Drive in Tampa, Florida.  The officers found the victim on the ground bleeding from a gunshot wound to his back. Thereafter, the officers secured the crime scene and began questioning witnesses.

Officer Levine was one of the officers questioning witnesses at the crime scene.  Officer Levine was approached by a woman at the crime scene that told her that Hyman Ahedo had taken guns from the scene and had put them in a clothing hamper in her apartment.  The police recovered two guns from the woman's clothing hamper.

Thereafter, Detective Parashis took a sworn statement from Ahedo at the crime scene. Afterwards, Detective Parashis asked that Ahedo be taken to the police station to have his statement recorded.  Officer Fitzpatrick transported Ahedo to the station.

During the investigation, Detective Parashis learned the names of two men that were allegedly involved in the shooting—Raymond Rymer and James Maroraty.  Detective Parashis asked Detective Puleo to go to the station and prepare two photopacks, one containing Rymer and one containing Maroraty, to show to Ahedo.

During the investigation, officers learned that the landlord of the apartment complex provided a name of an acquaintance of one of the men involved in the shooting. Based on a records search of the acquaintance's name, the police determined a possible address for the acquaintance. Police went to that address and conducted a traffic stop of Carina Cannady, and Cannady identified Jamar Moore as a person that matched the description of one of the people involved in the shooting. Thereafter, Sergeant Blasioli called Detective Parashis and told Detective Parashis that Cannady had identified Jamar Moore as a person that matched the description of one of the people involved in the shooting. In response, Detective Parashis gave Detective Puleo this information and asked her to create a photopack containing Moore's picture and to have it shown to Ahedo.

Detective Puleo created the photopacks of Rymer and Moore. Each photopack contained six pictures, and each picture was numbered from one to six. Detective Puleo picked the six pictures to be used in each photopack and then filled out the first page of the photo pack, which consisted of a key that correlated the photo number with the person's name.

Detective Puleo gave the photopacks of Rymer and Moore to Officer Fitzpatrick (without the first page that identified the pictures) so that Officer Fitzpatrick could show the photopacks to Ahedo. Thereafter, Detective Puleo began preparing an affidavit in support of a search warrant for Jamar Moore.

While Officer Levine interviewed Ahedo at the station, Officer Fitzpatrick showed Ahedo the photopacks. Neither Officer Levine nor Officer Fitzpatrick knew the names of the men in the pictures, nor did they know which picture in each photopack was the one of the suspect. When shown the photopack containing Moore, Ahedo identified the person in the picture labeled as #1 as the shooter. Ahedo marked on photo #1 that he was identifying that person as the shooter. (Gov. Ex. 2).

Thereafter, Officer Fitzpatrick returned the photopacks to Detective Puleo and told her that Ahedo had identified men in both photopacks. Detective Puleo took the photopacks, but she

did not compare the photo that Ahedo identified as the shooter with the key to determine the name of the man that Ahedo had identified. Instead, Detective Puleo simply assumed that Ahedo had identified Moore as the shooter. Moore's picture, however, was picture #3 in the photopack, not picture #1.

After Officer Fitzpatrick gave Detective Puleo back the photopacks, Detective Puleo finished the affidavit for the search warrant by including a statement that Ahedo was able to positively identify the suspect (Jamar Moore) via a photopack. (Doc. No. 27-1). Thereafter, Puleo signed the affidavit and brought it to Judge Bergmann shortly after midnight on October 10, 2011. Judge Bergmann signed the search warrant, and the police went to search the address identified for Moore in the search warrant. When the police arrived at the address, they found Moore, and Moore led the police to the place in the house where he had a gun. Upon recovering the gun, the police arrested Moore as the shooter.

On the evening of October 12, 2011, Detective Puleo was reviewing her paperwork when she realized that she had made a mistake when she had assumed that Ahedo had identified Moore as the shooter. Detective Puleo notified Detective Parashis of the error, and they notified their boss of the error the next morning.

At some point after Moore's arrest, while the victim was still in the hospital, Detective Parashis spoke to the victim. The victim said that he saw Moore's picture on the news and that Moore was *not* the shooter. However, the victim confirmed the Moore was involved in the incident that led to the shooting.

## II. Motion to Suppress

Because Ahedo did not identify Moore as being involved in the shooting, and because the affidavit in support of the search warrant falsely states that Ahedo did identify Moore, Defendant Moore now moves to suppress the gun found as a result of the search warrant containing the false statement. To prevail on a motion to suppress based on allegations of falsity in the supporting affidavit, the defendant bears the burden of establishing that: (1) the affiant made the

false statement knowingly or recklessly, and (2) the exclusion of the false statement would result in lack of probable cause.  U.S. v. Holt, 408 Fed. Appx. 229, 234 (11th Cir. 2010)(citation omitted); Franks v. Delaware, 438 U.S. 154, 156 (1978).

The Government concedes that Detective Puleo's statement in the affidavit that Ahedo had positively identified Moore via a photopack is false.  However, the Government argues that the gun should not be suppressed, because: (1) the false statement contained in the affidavit was not made with reckless disregard for the truth[1]; (2) the remaining information contained in the affidavit is sufficient to support a finding of probable cause; and (3) the gun would have been inevitably discovered.  Accordingly, the Court will address each argument.

**A.  Recklessness**

The Government argues that the gun should not be suppressed, because Defendant cannot establish the first element required for suppression—that Detective Puleo made the false statement contained in the affidavit with reckless disregard for the truth.  Defendant, however, points to the following evidence that he contends shows that Detective Puleo's inclusion of the statement in the affidavit that Ahedo had positively identified Moore resulted from her reckless disregard for the truth.

Specifically, Defendant points out that Detective Puleo had worked for the Tampa Police Department for 18 years, and she had been a detective for the last two years.  Thus, she was an experienced police officer that knew how to properly utilize a photopack and how to analyze the results of an identification made therein.  Thus, Detective Puleo's actions—(1) she failed to verify who Ahedo had identified from the photopack, (2)  she simply assumed that because Ahedo had made an identification within the photopack that he must have identified Moore, and (3) she swore in an affidavit that Ahedo positively identified Moore via the photopack—cannot be characterized as anything other than acts done with reckless disregard for the truth.

---

[1]Defendant Moore does not argue that Detective Puleo intentionally made the false statement in the affidavit.  Instead, he argues that she made the false statement with reckless disregard for the truth.

The Court agrees with Defendant that Detective Puleo acted recklessly, as her actions completely undermined the utilization of the photopack. The photopack contained six pictures of individuals that looked similar to one another, and given that Detective Puleo was not already familiar with Moore (and thus could not recognize his picture prior to the creation of the photopack), her failure to use the key on the first page to verify who Ahedo had identified was clearly reckless. Her actions were not the result of an oversight, nor did she make a mistake during the verification process; instead, she simply failed to do any verification to confirm her assumption that Ahedo had identified Moore via the photopack. Furthermore, she swore in an affidavit that Ahedo had positively identified Moore via the photopack, despite the fact that she knew she did not confirm her assumption regarding the identification. Accordingly, the Court agrees with Defendant that Detective Puleo made the false statement in the affidavit with reckless disregard for the truth.

**B. Probable Cause**

Next, the Court must determine if Defendant has met his burden of showing that the false statement in the affidavit was essential to the probable cause determination. The Government argues that the gun should not be suppressed, because the remaining information contained in the affidavit is sufficient to support a finding of probable cause. For the affidavit to be sufficient, it must contain sufficient facts for the judge to conclude that there is a fair probability that contraband or evidence of a crime will be found at the place to be searched. See Illinois v. Gates, 462 U.S. 213, 238 (1983). As explained below, the Court concludes that the remaining information was insufficient and that the false statement in the affidavit was essential to the probable cause determination.

The relevant portions of the remaining information in the affidavit consist of the following:

> Personally appeared, Stephanie Puleo, . . .who first duly sworn, deposes and says: Affiant . . . has reason to believe and does believe that Jamar Antonio Moore

7/26/87 is located in Hillsborough County described as follows, to-wit: 5030 Springwood Dr., Tampa, Fl 33624.

**Being the premises occupied under the control of 5030 Springwood Dr., Tampa, Fl certain data/information with evidentiary value to-wit: An unknown firearm, possibly a revolver, black in color.**

*    *    *

**That the facts tending to establish the grounds for this application and the probable cause of Affiant believing that such facts exist are as follows:**

*    *    *

4.  On 10/9/11, at 1730 hours, a 911 call came in to the Tampa Police Department reporting a shooting at the apartment complex named Park 46 Apartments, located at 4603 Whiteway Dr., Tampa, Fl. . . .

5.  There were numerous witnesses to the shooting who identified the suspect as a person who frequents the apartment complex, but could not identify the suspect by name.

6.  [Through] [i]nterviews with witnesses, officers learned that the victim had been involved with the suspect and other individuals in an argument over a stolen cellular phone, earlier on this date. The argument continued into the evening hours with the victim again meeting up with the suspect and two other individuals. During the argument, the suspect and victim got into a physical confrontation. During the confrontation, the suspect's friend was also trying to fight with the victim. The victim turned to fight the suspect's friend. The suspect pulled a firearm and pointed it at the victim. The suspect then fired the weapon at the victim, striking him one time in the back.

7.  During the initial investigation, the landlord of the Park 46 Apartments provided a name of an acquaintance of the suspect. During TPD records research, officers were able to obtain a possible address of 10708 N. Connechussetts Ave. Undercover officers observed a suspicious vehicle near the residence, circling the area. Officers conducted a traffic stop and made contact with Carina Cannady who gave a sworn statement that she had driven the suspect and another individual from 22nd St. and Fowler Ave. to 5030 Springwood Dr., Tampa, Fl, after the offense. Cannady provided the name of Jamar Antonio Moore, 7/26/87.

8.  A witness, Hymen Ahedo Jr., 4/23/70, was able to positively identify the suspect through a sequential photopack. He also provided a sworn statement.

9.  Undercover officers responded to 5030 Springwood Dr. to ascertain if the suspect was at the residence. During surveillance, officers did observe the suspect exit, then re-enter the residence. Officers secured the residence.

(Doc. No. 27-1).

Without Ahedo's identification of Moore as the shooter in the affidavit, there is not sufficient information to connect Moore to the shooting. None of the witnesses at the scene could identify the shooter by name. While Cannady did provide the officers with Moore's name, she did so when stating that she picked Moore up at 22nd Street and Fowler Avenue (which was approximately two miles from the shooting) and drove him to 5030 Springwood Drive. However, there is no indication in the affidavit that Cannady or anyone else connected Moore to the shooting. Accordingly, the Court concludes that the remaining information contained in the affidavit is not sufficient to support a finding of probable cause.

### C. Inevitable Discovery

Alternatively, the Government argues that even if there was no probable cause for the search warrant, the gun should not be suppressed, because the gun would have been inevitably discovered. Under the doctrine of inevitable discovery:

> [E]vidence obtained through an illegal search may nonetheless be admitted at trial if the information ultimately or inevitably would have been discovered by lawful means. For the inevitable discovery exception to apply, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct. The active pursuit requirement is satisfied if the police can show that the evidence would have been discovered by virtue of ordinary investigations of evidence or leads already in their possession.

U.S. v. Ethingor, 388 Fed. Appx. 858, 860 (11th Cir. 2010)(internal citations omitted).

In this case, Defendant's gun was discovered hours after the shooting occurred at the house that Defendant was dropped off at by Cannady. While the Court acknowledges that: (1) there was an active investigation into Moore's involvement in the shooting prior to the illegal search, and (2) had the victim been showed a photopack containing Moore's picture at the hospital, the victim would have identified Moore as being involved in the shooting, this is not sufficient to satisfy the inevitable discovery doctrine. The victim was hospitalized and could not have identified Moore prior to the illegal search, and as such, it cannot be said that discovery of

the gun was inevitable. By the time that the victim could have been shown the photopack containing Moore and a search warrant could have been obtained based on that identification, Moore could have moved the gun from the house. Thus, the inevitable discovery doctrine does not prevent the suppression of the gun as a result of the illegal search.

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant Moore's Motion to Suppress (Doc. No. 21) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this 21st day of May, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record